I want to return to the next case, which is 21-2016, Mark McCree v. Specialized Loan Servicing, LLC. I understand we have counsel for both sides. For the appellant, we have Attorney Bromberg. And for Appleby, we have Attorney McGrath. Is that right? And, Attorney Bromberg, I understand you would like to reserve two minutes for rebuttal. Is that right? Yes, Your Honor. Okay. Please proceed when you are ready. May it please the Court, my name is Brian Bromberg and I represent the appellant, Mark Macris. The issue here is whether when a lender removes a consumer, here Mr. Macris, as a necessary party from a foreclosure action in New York, the lender can continue trying to collect on the note and can report the consumer to the credit reporting agencies as being in default and as being a defendant in the foreclosure. The facts here are relatively simple. In default on the foreclosure and default on the note? I'm just trying to understand a little bit. I thought he was still a debtor on the note. He had never been released from the note. Well, he had been released by operation of law, Your Honor. They had the – I thought the wife promised. I thought the wife promised to take him off the note, but never did. The wife did promise to take him off the note, never did. But he was on the note. He was on the note, yes. So what does the bank care that he's got – somebody else has an agreement to take him off the note that's never been executed? Because the bank's attorneys operating on behalf of the bank went ahead and filed – agreed with him to take him off the case, to take him off the caption. No, no, no. But not off the note. Separating the note from the foreclosure, I mean, you're treating – I'm sorry, the opposite. But he was not – he was still on the note. Your Honor, he may have still been on the note, but the thing is, once – Actually, let's clarify that. Okay. Was he still on the note? He was still on the note at the time the foreclosure was filed. Okay, he was. So we all agree. Yes. And he was on the note until – certainly there couldn't have been anything that could have happened conceivably until after the foreclosure action was done, right? No, Your Honor. They took him off the – they took him off the case. Okay, with respect to the note. But by operation of law, he implicitly, by stating he's no longer a necessary party and removing him from the action, they lost the right to proceed against him for deficiency. Two different things, I think. The right to proceed against somebody and whether he still has a debtor – he's his debtor on the note. Let's say the very next day he had declared bankruptcy. Yes. And he has to list a schedule of liabilities. Would your view be that because he had been delisted from the foreclosure action, it would have been a truthful statement in bankruptcy to say, I have no liabilities? Wouldn't that have been fraud? He would have had – Your Honor, he would have had a speculative liability. They would have had to go back and undo things. Well, that's a likelihood of collecting on the note or something. But he had a liability on the note. He hadn't – he hadn't gotten off the note. He was still on the note, Your Honor, but they did not have the right to proceed against him, either through collection or through a deficiency on the note. Can you help me understand? Because this is – I've been struggling. I've been spending a lot of time trying to learn New York mortgage law. Okay. That's right. And understanding the interaction between 1301 and 1371. And the statutes make it clear what – that you can't pursue an action on the note and a foreclosure at the same time. And it describes what happens if you start with an action on the note independent of a foreclosure action. What's less clear to me is if you start with a foreclosure, is it the case that your only opportunity to secure a judgment for a deficiency, whether it be within that foreclosure action – or is within that foreclosure action – so, in other words, by dropping him from the foreclosure action, as a matter of law, S.O.S. was precluded not only from getting a deficiency judgment within that foreclosure action against him, but in the event that they sought a deficiency judgment against his wife, they got it, they weren't able to collect it, where they had been foreclosed from pursuing him separately on the note. Yes. And can you tell – is there a case that says that? That's the thing I've been trying to find. No, there's the Minnan case, Minnan v. 22494, Amsterdam. That was 2011 New York Miscellaneous Lex 5203, which said that you have to join guarantors to pursue a deficiency. And then there's also Federal National Mortgage Association v. Connolly, 84 Appellate Division 2nd, 805, and that's 2nd Department, 1981, where they held that a mortgagor who made an absolute conveyance of their interest in property was not a necessary party unless the lender wanted to pursue a deficiency. And what I couldn't figure out in that case is whether that meant pursue a deficiency in the context of the foreclosure action or whether it meant pursue a deficiency in any context, including a post-foreclosure action on the note. In any context, Your Honor. Okay. The point of 1301 and 1371 is that everyone whose rights are affected has to be in one action. Exactly. I guess I don't see why we're equating the ability of the lender to seek particular legal action as a remedy to change whether or not Mr. McCree still had a liability. Now, it may have been difficult or maybe even impossible under your view for them to enforce it, but why does that not mean that he didn't have the liability? Maybe by operation of law they were stripped of their ability, but don't you have the cases that say, you know, under New York law, let's say the statute of limitations is wrong, right? So you can't sue someone to collect the debt, but the debt collector can still approach you and do things short of a lawsuit to collect the debt. It doesn't mean the debt is gone. It just means that a particular legal remedy for collecting the debt has vanished. Why are we equating the two? Your Honor, this is different. This is not, this is a situation where you must, if you wish to collect on it, you must bring that within the context of the. Again, you're talking about a remedy. Right. And you're saying the remedy is gone. But why are we equating the remedy with the liability? Well, Your Honor, we don't even have to reach that step because the statements that were made to the credit reporting agency in the verification, they advised that he was still a defendant in the foreclosure action, that there was still a foreclosure action pending against him. So we don't even have to get to that point. In addition, the fact that. At the time that they reported that to the credit agency, you're saying that was incorrect? That was incorrect. He was no longer a defendant in a foreclosure action. Well, just. He was still on the note. He still had the obligation. But they advised him that he was, they advised, they advised in the credit report. He was no longer on the note? He was, well, he was no, he was no longer a defendant in the action, Your Honor. I understand that. We keep, we keep repeating that. Just because he was no longer a defendant in the action doesn't mean that he was off the note. Right? No, Your Honor. By taking him off the action, he was no longer on the note. The only way they could put him back on the note was by going back to the court and saying, Your Honor. No, he was never off the note. You know, there's cases, there's a treatise, Bergman, New York Mortgage Foreclosures makes that clear. After the release by the mortgagee to the mortgagor, the mortgagor remains liable for the debt. Even though he's not a necessary party to the foreclosure. And there are cases on this. You know, the foreclosure cuts off all the subordinate creditors who are subordinate to this. And it takes the property away from them and uses it to satisfy the debt up to a point. But it doesn't leave the debtor of the debt necessarily. Your Honor, the only way they could pursue that is within the context of the foreclosure. They would have to go back to a court and undo everything. Foreclosures, a mortgage is secure, right? Right. You can have a note and you can have indebtedness without security. And it was no longer secured by the mortgage, but it still was a debt. Your Honor, if they had wanted to pursue that, they would have had to decide not to bring the foreclosure or join him as a defendant in the foreclosure action. I take your point that not that the debt is not distinct from the mortgage, but that by operation of these statutes, removing him from the foreclosure action precludes any opportunity to go after him on the debt, which is functionally the same as releasing him from the debt. That's sort of how I'm, maybe I'm not paraphrasing very well. But what I'm strong with a little bit is timing. I think everyone would agree that 90 days after the foreclosure action, if they haven't sought a deficiency by operation of statute, they can't go after anybody. The debt is extinguished. What if the foreclosure action here, though, goes belly up, right? They withdraw it. Maybe there's some procedural problem. For whatever reason, they withdraw the foreclosure action. And at that point, the operation of law that you're relying on doesn't exist anymore because the foreclosure action has gone away before the debt was extinguished or satisfied. In that case, is it your view that your guy was still off the hook on the debt? Based on the representations they made to the court, they would have to explain why the affirmation of regularity in which they affirmed under penalty of perjury that he was not a necessary party, why that should be undone. They'd have to explain why somehow the order of reference wouldn't judicially preclude them from going after him. They'd have to explain why the judgment prior to the sale wouldn't preclude them from going after him. By the way, the ability to go after him within 90 days of the sale, they didn't have that ability. They only had the ability to go after the wife whose name was still on the complaint during that 90-day period. I think the court below misapprehended that. Once he was off, they could not pursue the deficiency against him. By taking him off and eliminating his right to notice and an opportunity to be heard, his right to keep an eye on everything, his right to be served for papers, once they took that all away during that 90-day period, he's not a party to the action. They could not go after him for any deficiency. Right. What I'm positing is a scenario in which the foreclosure action comes to a grinding halt and gets dismissed, right? At that point, the debt's still there. Maybe there's an opportunity to initiate a new foreclosure action. Maybe there's an opportunity to pursue certainly the wife on the note. I'm trying to figure out what your legal theory would be to say that in that scenario, the husband still isn't liable on the note. The argument would be a stopple. First of all, through the affirmation of regularity where they said he's not a necessary party. He didn't suddenly become a necessary party if the foreclosure goes belly up. But saying he's not a necessary party is a way of saying we're forfeiting any opportunity to pursue him for a deficiency following our sale of the property and whatever we recover. If you don't actually follow through and get a foreclosure judgment, I'm just trying to figure out whether that representation outlasts that scenario. That would be a question of fact. But surely it would show a lack of intent. And the lack of intent would go back to 15 U.S.C. 1692E where you've made a threat to take an action that could not legally be taken or that you did not intend to take. What we've certainly seen throughout all of this is they had no intention of actually coming after him for the deficiency. Nevertheless, he was getting calls and letters and credit reporting all attempting to collect on a deficiency they apparently after the affirmation of regularity had no intention of attempting to collect on. If you're wrong, does that end the case? In other words, do you have any claims that survive if you're wrong on the question of whether the note was extinguished, his indebtedness on the note was extinguished? Yes, Your Honor, because they were continuing to treat him as if he were still in the foreclosure and they were reporting on his. I wanted to ask you about that. I think you made a statement that regardless of anything, they made a false statement to the credit reporting agency that he was a party to the foreclosure action? Yes, they advised that there was a foreclosure. Point needs very specifically in the record because if you're talking about appendix page 719, I don't see that. I see where the notation says foreclosure proceeding started. Are you suggesting that that notation contains the implicit suggestion that Mr. Macri's was a party? Yes. Even though it wasn't stated? So you're not – so that's a little different because you were saying they told the credit reporting agency that he was a party. But you're not saying that that's written anywhere. You're saying that it is implicit because they said foreclosure proceeding started. They were implicitly suggesting that he's a party. Those are two different factual assertions. And I'd like to be clear because maybe I'm missing something. Maybe there is something where they said Mr. Macri's is a party to a foreclosure proceeding. No, well, foreclosure – But we need to be very precise about our wording here. What is your factual assertion? I would say that that's implicit within foreclosure proceeding. No, no, just say it all out. What is implicit, you're saying? The fact that he is a defendant in the foreclosure proceeding is implicit within foreclosure proceeding. So you are not making an assertion – because maybe there's a document in the record, and I think we'd want to be directed to it. You're not suggesting there is a document in the record where they say Macri's is a party, where they say it, as opposed to implicitly suggesting it? Those particular words, no, Your Honor, no. Okay. But I would say it was implicit. The other thing is when he disputed – But it is true that there was a foreclosure proceeding started. There was a foreclosure proceeding started. On that property that related to that liability. Yes, but then you've got an omission by failing – when you omit half the facts, you're implying the other half. When you fail to say – Well, you claim – I claim. You claim that he was – that the report was false for reporting that he was a defendant in a foreclosure proceeding. And I don't see anything in there saying that he was a defendant in a foreclosure proceeding. I read it implicitly within there, Your Honor. Okay. Well, you didn't say that – you didn't say for implicitly suggesting it. You said that they reported it, right? The other thing, Your Honor, is – yes. The other thing, Your Honor, is that they did not note that the account was disputed when they reported it to the credit reporting agencies. You've got the notation that the item is disputed by consumer, but that – It doesn't show up as disputed. It shows up as disputed, right? No, that's because our client stated that it was disputed. They're supposed to actually – You're saying SLS did not – Hmm? You're saying SLS did not say that it was disputed in reporting to the credit reporting agencies. That was our client's notation. But do they have to if it's frivolous? If, in their view, there's no merit to it? Yes. Under – this court has held, I believe it was Savino v. Consumer Credit. And which statute are we referring to, the Fair Credit Reporting Act or the FDCPA? That's under the FDCPA, if I recall correctly. I'd have to double-check. There is a parallel provision in the Fair Credit Reporting Act. I don't have it right in front of me. In the FDCPA – It's 1692E8, I think. Yes. 1692E8 – no, I'm saying I don't recall the exact provision within the Fair Credit Reporting Act. Oh. 1692E8. This court has held, and I believe it was Savino v. Computer Credit, that – oh, hold on. That actually had to do with the G violation. There is, however, case law saying that a dispute for any reason or no reason does have to be notated when there is a verification. That's under the FDCPA, right? Of the FDCPA, yes. I don't – the Savino case might not be perfectly on point. I know there are cases from other – I think within this jurisdiction and also from other jurisdictions that the mere fact of the dispute has to be noted. My understanding – correct me if I'm wrong – is that you do have to notify the person supplying the information to the credit agency – to the reporting agency has to note a dispute, if there is a dispute, notwithstanding the merits of the dispute, under the FDCPA, but not under the FCRA. That's – I believe that's correct, Your Honor, yes. Okay. But on the other hand, under the latter, FCRA, you have to – you don't have to report a dispute if you think it's frivolous or if there really is no dispute in substance. You could reach that determination as an agency that is reporting to the reporting agency. If that conclusion is reasonable, and we would argue that that conclusion is – That's why I'm wondering, if your position is wrong here, what is left of your case? And I think what you're saying is, I guess, the fact that he still disputed it, regardless of right or wrong, he still disputes it. He's saying I disputed it. It hasn't been determined that it's right or wrong. That's what we're here for. But at that point, you still have an obligation under the Fair Debt Collection Practices Act to report the dispute. Yes. And then furthermore, Your Honor, within the – I'm beyond my time. I don't know if I should – Go ahead. Okay. You can make one last point, and we'll see you for rebuttal again. Okay. Under the – in the telephone conversations which were recorded and in which we have transcripts, they told him the only way he would get out of this is through a short sale and that he'd be liable on this until the cows come home. I think that's objectively false, regardless of which way this Court finds on the pending questions. He certainly – you know, I think there's no question now that he's certainly no longer obligated on the note. And again, at the date of sale, there was certainly no question that he was no longer obligated on the note. He's not a named defendant, so they couldn't have gone for a deficiency judgment anyway, regardless of what view this Court takes. Thank you, Your Honor. Thank you. Why don't we hear from the appellee? We have Attorney McGrath. Good morning, Your Honors. May it please the Court, my name is Brian McGrath, and I'm counsel for Appellee Specialized Loan Servicing, LLC, otherwise known as SLS. As Your Honors just heard and undoubtedly surmised from the briefs and the district court's lengthy 40-page decision, appellant is trying to accomplish in this litigation and through argument what he actually never did as a contractual matter, which was to sever his contractual obligations under the note that was secured by a mortgage on the property he purchased and jointly executed with his now ex-wife in 2008. But aren't there various ways in which the New York statutes extinguish somebody's liability on the note, depending on what does or doesn't happen in a foreclosure action? Absolutely, Judge Robinson, and I was just going to pivot to the point you were raising before, is if the foreclosure action were to go belly up, and I had prepared four different scenarios in which a foreclosure action that the appellant was released from could go belly up. One, which appellant forgets, is under the mortgage documents, the loan documents, his ex-wife and appellant himself could have reinstated the note, brought it current, and by operational law the foreclosure action would have terminated. That is objectively a possibility. It might not have been a practical reality, given the financial situation, but it preserves the legal right and the contractual obligation of appellant until the conclusion of that foreclosure action. Another example, SLS itself could have voluntarily discontinued the foreclosure action, something that routinely happens in New York foreclosure law, given the ever-changing rules for foreclosure procedures in this state, and could have done so without prejudice and recommenced under New York statute of limitations on a mortgage note, which is six years. And in that scenario, SLS having represented to the court that he's not a necessary party, would that have an impact on their ability to go after him subsequently in the note if they essentially said to the court, we're not going to pursue him for any deficiency? Great question, Judge Robinson, and exactly where my next pivot was. I'll just lead you through each point. Thank you. Even accepting, just for purposes of this hypothetical argument, appellant's argument, that somehow the release of him from the foreclosure proceeding was a forever and ever waiver of SLS's rights to pursue him in foreclosure, that is separate and apart, as Judge Walker and Judge Nardini have acknowledged, there's still a note obligation. And so they've never released him from his note obligation. So at worst for SLS, and again, just for argument's sake, appellant was released from a future foreclosure proceeding. However, even on that point, the record makes clear that the affirmation of regularity, the order of reference that dismissed appellant as a party to the foreclosure action, were without prejudice. It was silent. And under New York CPLR, when a dismissal of a party is not noted with or without prejudice, the presumption is without prejudice. A waiver argument, to the extent we go there, again, I don't think we need to, because the note obligation remains regardless of whether SLS had the right to pursue him in foreclosure. The waiver would require some sort of consideration and reliance, and there is nothing in the record that shows that Mr. Macris relied or gave anything to SLS to make that a binding waiver forever and ever to Your Honor's point. If the foreclosure had proceeded to an orderly conclusion through a sale and either there's a deficiency of theirs or not, could your client have post-foreclosure action pursued Mr. Macris on the note for any unpaid balance, or do you acknowledge that at that point, having dismissed him from the foreclosure action, which then runs its course, your client is precluded from going after him? Yeah. At that point, Your Honor, SLS's rights to pursue on the note, as you identified earlier, did come to an end. The note and mortgage merge at the end of the 90-day period post-sale. They become one instrument. The debt is discharged. All right to pursue on that debt is thereby extinguished. It's important to note that period of time, which was in January of 2017, is well after all the predicate facts that underpin the FDCPA and FCRA allegations. That period of time is July 8, 2015 through August 2, 2016. During that entire span of factual predicate events, Mr. Macris was legally and contractually still obligated on the note. Even in the hypothetical world where SLS had released a recovery avenue through an equitable action in a foreclosure. Let me ask a question here. Assuming we agree with you that he was still liable on the note, then all of your reporting of the debt would have been accurate. But what about the fact that he's continuing to dispute it? And how does that play out under the Fair Debt Collection, whatever it is, the Fair Debt Collections Practices Act, 1692b8, which requires that you inform the reporting agency of any dispute? And you didn't tell them about any dispute at that point. I understand that under the Fair Credit Reporting Act, you can reach a conclusion that it would be frivolous and therefore we don't have to report it, but I'm not sure that that's true under the other act. So, Your Honor, that is a good question. And certainly in the briefs of appellant, they cite to a Third Circuit decision that discusses the somewhat redundant obligation to report a dispute back to a credit reporting agency that has sent you a dispute. The record is silent on the existence of reporting back dispute. What the record has said is SLS investigated the dispute, confirmed that it was frivolous and that the reporting was correct, and an SLS's position reported that back and there was nothing left to dispute. And the way the district court dealt with that issue was to consider the fact that the complaint itself was baseless or frivolous. There did not attach a further obligation to report a dispute once the agency has, once, sorry, once SLS had confirmed that the debt and the reporting, the debt was valid and the reporting was accurate. Can I? Well, I'm clear on that as far as the Federal Debt Reporting Act is concerned or the Fair Debt Reporting Act is concerned, but I'm not so clear on the other statute under the section that I just gave you. Can I ask you on that point that Judge Walker is asking you about, about the timeline here? And I may be wrong, and that's why I would appreciate your clarification perhaps also from the appellant, is that there was no dispute. I shouldn't use that. It seems uncontroverted that Mr. Macris had not disputed the debt with SLS before it was reported. So my understanding is the first time SLS reported this debt to Experian, it wasn't disputed. It was that after the credit agency came back to SLS and said, hey, this is disputed, SLS looked into it, reported back and said, well, we don't think so. The claim seems to be that SLS didn't tell Experian, hey, you know what, the debt that you said is disputed, I know it's disputed. We, you know, it seems like a circular sort of thing, like why should you have to tell Experian? I understand this. Tell me, is this the timeline and is this your argument that SLS shouldn't need to confirm to Experian? Yes, that thing that Mr. Macris has disputed is disputed, but we think it's wrong. What SLS said is we think it's wrong, but didn't say back, didn't sort of parrot back to Experian. The thing that he's disputed, he's disputed. Is that your argument? Or I don't want to put words in your mouth here. Sure, Your Honor. Let me just try and clarify the position. So you are correct that the private right of action wouldn't attach until the dispute has been filed. Right. And then it relates to the investigation and the subsequent reporting. But you're correct that there's no private right of action in the first instance prior to Mr. Macris' dispute as to how their credit reporting. The statute, which is remedial, is designed to help clean up credit reports for borrowers where there have been errors on their reporting. Sure. So in this situation, the argument from SLS is it received its ACDD, the electronic dispute, from the Bureau. Which is Experian here, right? Which is Experian. ACDD is the system. They received that dispute, electronic dispute, from the credit reporting agency. That which obviously identified it as a dispute. They promptly investigated, confirmed that the obligation was still outstanding. Mr. Macris was still contractually and legally obligated on the note. And reported back that the reporting on this note is accurate. And it's SLS' position that that complies with the statute. And there's no binding precedent in the Second Circuit anyway that says that it had to do more than that. The rest would be conjecture as terms of what the legislature truly meant. As I noted, there's a Third Circuit decision that takes a slightly different direction on that. But there's nothing binding on this circuit that says that SLS, once it had completed and verified the credit reporting is accurate, also had to respond saying, yes, the thing you sent us that disputed was disputed and it's accurate. That piece was not, in SLS' position, a requirement under controlling law in this circuit. Because the whole reason it came back to them was because it was disputed. Because Experian knew it was being disputed. So you're saying you didn't need to confirm the fact that got it communicated to Experian in the first place. And I'd be curious to hear the appellants view on this too. Yes, and if there are no further questions, APLE will rest on its briefs. Thank you. Thank you. Mr. Brownberg, since obviously we started going on to this topic, if you wouldn't mind addressing this point, we would welcome your position on how that plays out. Our position is that, by the way, yes, from what we can tell, they parked. That's the term that people use in the industry. They park the negative information on his credit report and then later on he triggered. I'm sorry. Could you explain that? Because I'm not familiar with the term. Oh, yeah, yeah. They parked. In other words, like SLS put the negative information on his credit report. Which was that there's a debt. Yes. Okay. And then later on he disputed it. And to whom did he dispute it? Well, he disputed it first to SLS and later on to the credit reporting agency. Okay. Triggering the reinvestigation. Okay. In response to the reinvestigation, there were two obligations. There's the obligation under the Fair Credit Reporting Act to do a reasonable reinvestigation. That's for the credit reporting agency and for the furnisher. And then there's a separate obligation under 1692E8 that if the account is disputed, they have to report to third parties that it's disputed. And here they had to report it to the credit reporting agency when the credit reporting agency said to them, you know, what's up with this account? Well, they don't. Did the credit reporting agency say to them, MACRS disputes this? MACRS disputes this, but that wasn't coming from the debt collector. I know. But then they contacted the debt collector, and the debt collector says, I agree, but I understand that. And then doesn't actually report that it's disputed itself, but the information is already in the hands of the credit reporting agency. Yes, but there's an independent obligation for the furnisher to say, yes, in fact, it's disputed under the FDCPA. I understand the point. It has to be done even though it's basically inconsequential to the reports because the reports are going to report the dispute anyway. Would your argument be that it just goes to damages or something? Like, yes, they had an obligation under the statute to tell Experia and say, hey, the account you told us is disputed, by the way, did you know it's disputed? They had to say that. They had to say that. Is that just statutory damages then? Well, that would be primarily statutory damages, yes. Now, by the way, there's a representation by SLS that there was no consideration for giving up the claims against Mr. MACRS. There was consideration. They had no one looking over their shoulder now. They had a default from the ex-wife, from Catherine MACRS, and they had no one looking over their shoulder to make sure that everything was done properly. They had no obligation to serve him with papers. They had no one saying who might challenge their legal fees. They had no one who might challenge the commercial reasonableness of any sale. They got smooth sailing in exchange for removing Mr. MACRS from the case. So there certainly was consideration for what they gave him. He gave them something in return. And they got clean sailing, and then presumably they got whatever they got from the sale of the premises. And, again, there certainly were actions that took place after the sale and before the 90 days. And I think the lower court misunderstood. You cannot proceed against Mr. MACRS, who's no longer a party in the action, once they had taken him off after that 90 days. They could have gone for a deficiency judgment against his ex-wife, but not against him. And I said that amount of time, and I should probably wrap up. Thank you, Your Honor. We thank both sides. Very well argued and very helpful arguments. So thank you to both of you. We will take the case under advisement, as we are doing with all of the cases on today's calendar. So I think having completed the calendar, we will now stand adjourned.